**METRO BUILDING COMPANIES, INC., Respondent,**

v.

**RAM BUILDINGS, INC., defendant and third party plaintiff, Appellant,**

v.

**Raymond Manahan and Krishna Brutoco d/b/a Manahan Stables, Manahan Stables, LLC, Third Party Defendant.**

No. A09–1893.

Court of Appeals of Minnesota.

June 1, 2010.

Review Denied Aug. 10, 2010.

Karl E. Robinson, J. Matthew Berner, Hellmuth & Johnson, PLLC, Eden Prairie, MN, for respondent.

Patrick S. Collins, Oskie, Hamilton & Sofio, P.A., St. Paul, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; LARKIN, Judge; and BJORKMAN, Judge.

## OPINION

LARKIN, Judge.

Appellant claims that the district court erred by denying its motion for summary judgment, arguing that the district court erroneously concluded that a complaint may be amended to correct a corporate plaintiff's misstatement of its registered name. Appellant also claims that the district court abused its discretion by allowing such an amendment in this case and erred by relating the amendment back to the original pleading. Because we conclude that the misstatement of a corporate plaintiff's name in its pleading is a curable defect and that the amendment and relation back in this case were proper, we affirm.

## FACTS

Manahan Stables contracted with respondent Metro Building Companies, Inc. (Metro) to build a horse barn. Metro subcontracted with appellant RAM Buildings, Inc. (RAM), to design and build the ventilation system. After Manahan Stables complained that the ventilation system was faulty, Manahan Stables and Metro entered into a settlement agreement providing that another company would repair the ventilation system and that Manahan Stables would release Metro from all liability. Metro subsequently sued RAM claiming breach of contract and negligence in the design and installation of the ventilation system.

Metro's corporate name, as registered with the Minnesota Secretary of State, is "Metro Building & Painting Companies." But the caption and first paragraph of Metro's complaint against RAM identified Metro as "Metro Building Companies, Inc." Metro used the name "Metro Building Companies, Inc." in communications with RAM prior to filing this lawsuit.

In its answer to Metro's complaint, RAM admitted "that it designed a building pursuant to Plaintiff's specifications" and "that it entered into a contractual relationship with Plaintiff." But RAM also raised the affirmative defense of standing. After the statute of limitations had run, RAM moved to dismiss the complaint, arguing that Metro lacked standing and capacity to sue.[1] Thereafter, Metro moved to amend its complaint seeking to substitute "Metro Building & Painting Companies" for "Metro Building Companies, Inc." in the caption and first paragraph.[2] The district court denied RAM's motion for summary judgment, granted Metro's motion to amend, and related the amendment back to the original complaint. This appeal follows.[3]

## ISSUES

I. Did the district court err by concluding that a complaint that misstates a corporate plaintiff's registered name may be amended to correct the misstatement?

II. Did the district court abuse its discretion by allowing Metro to amend its complaint to correctly state its registered corporate name or err by relating the amendment back to the original complaint?

**1.** Because Metro had filed an answer, its motion to dismiss is properly construed as a motion for judgment on the pleadings. *See* Minn. R. Civ. P. 12.03 ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.") The parties agree that the motion was converted to one for summary judgment because the district court considered matters outside of the pleadings. *See id.* ("If, on such motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in [Minn. R. Civ. P.] 56, and all

## ANALYSIS

### I.

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). Where, as in this case, there are no genuine issues as to any material facts, the application of a statute to the undisputed facts is a legal question reviewed de novo. *City of Morris v. Sax Invs., Inc.,* 749 N.W.2d 1, 5 (Minn.2008).

In Minnesota, a lawsuit may be brought by a natural or an artificial person. *St. Paul Typothetae v. St. Paul Book Binders' Union No. 37,* 94 Minn. 351, 357, 102 N.W. 725, 726 (1905). A corporation is considered an artificial person. *Di Re v. Cent. Livestock Order Buying Co.,* 246 Minn. 279, 283, 74 N.W.2d 518, 523 (1956). RAM argues that because the named corporate plaintiff, "Metro Building Companies, Inc.," does not exist, it is not an artificial person and it lacks standing and capacity to sue. *See Cochrane v. Tudor Oaks Condo. Project,* 529 N.W.2d 429, 433 (Minn.App.1995) ("[C]apacity to sue concerns a party's right to maintain any action."), *review denied* (Minn. May 31, 1995). RAM further argues that the district court therefore lacked jurisdiction

parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

**2.** Metro also sought leave to add claims for contribution and indemnity. RAM does not contest this portion of the amendment on appeal.

**3.** Generally, an order denying a motion for summary judgment cannot be appealed. *McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 832 (Minn.1995). However, a special term order of this court deemed this action appealable.

over Metro's case and that the lawsuit was a nullity. *See Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 27 (Minn. 1989) ("The question of standing ... is essential to [a court's] exercise of jurisdiction.").

RAM's claim that Metro lacks standing and capacity to sue is based on RAM's contention that Metro's lawsuit was commenced by a "nonexistent corporate entity." This argument lacks merit. Metro is a real corporation, with a registered corporate name of "Metro Building & Painting Companies." This is the entity that filed suit. And while Metro erroneously identified itself in its pleading and discovery responses as "Metro Building Companies, Inc.," we are not willing to equate this error with a conclusion that the lawsuit is a nullity because it was filed by a "nonexistent entity." Such a conclusion puts form over substance in the absence of supporting legal authority and in contravention of the policy favoring resolution of cases on their merits. *See Lampert Lumber Co. v. Joyce,* 405 N.W.2d 423, 426 (Minn.1987) ("The law favors cases being decided on their true merits.").

And we are not persuaded by RAM's citation to cases involving failure to appoint a trustee in wrongful death actions. *See Ortiz v. Gavenda,* 590 N.W.2d 119, 122–23 (Minn.1999) (holding that the filing of a wrongful-death action was a nullity because a trustee had not been appointed as required by statute and appointment of a trustee was a statutory prerequisite to filing the action); *Regie de l'assurance Auto. du Quebec v. Jensen,* 399 N.W.2d 85, 91–92 (Minn.1987) (concluding that failure to have a valid trustee appointed in a wrongful-death action rendered the suit a nullity). As we explained in *Save Our Creeks v. City of Brooklyn Park:*

> The fundamental difference between the wrongful-death cases and this case is

that in wrongful-death cases, it is the appointment of the trustee that forms the legal capacity for a successor of the deceased to bring or to continue the action for wrongful death. Minn.Stat. § 573.02, subds. 1, 3 (2002). A corporation, in contradistinction, is an *existing entity* with a legal capacity to sue and be sued. Minn.Stat. § 302A.161, subd. 3 (2002).

682 N.W.2d 639, 648 (Minn.App.2004), *aff'd,* 699 N.W.2d 307 (Minn.2005) (emphasis added). Metro is an existing entity with a legal capacity to sue; it simply failed to sue in its registered corporate name.

Minn.Stat. § 302A.161, subd. 3 (2008), provides: "A corporation may sue and be sued, complain and defend and participate as a party or otherwise in any legal, administrative, or arbitration proceeding, in its corporate name." RAM urges us to construe section 302A.161, subd. 3, as imposing a condition precedent to the filing of an action: a corporate plaintiff must sue in its registered corporate name or the action is a nullity. RAM contends that when a corporate plaintiff misstates its name in its pleading, the defect may not be cured by amendment; instead, the case must be dismissed and re-filed. These are issues of first impression. No Minnesota appellate court has addressed whether section 302A.161, subd. 3, conditions a corporate plaintiff's right to sue on use of its registered corporate name or whether, to the extent such a condition exists, dismissal is mandatory when a corporate plaintiff fails to comply with the condition.

"If a statute, construed according to ordinary rules of grammar, is unambiguous, this court engages in no further statutory construction and applies its plain meaning." *In re Risk Level Determination of C.M.,* 578 N.W.2d 391, 395 (Minn.App. 1998). Because section 302A.161, subd. 3,

uses permissive instead of mandatory language, RAM's argument that a corporate plaintiff must sue in its registered corporate name does not find support in the plain language of the statute. *See* Minn. Stat. § 645.44, subds. 15, 16 (2008) (defining "may" as permissive and "shall" as mandatory). And even if we assume, without deciding, that the statute requires a corporate plaintiff to sue only in its registered corporate name, it is not clear that the failure to do so is a fatal defect. Because it is unnecessary to a resolution of this appeal, we leave for another day the interpretation of section 302A.161, subd. 3, and whether it requires a corporation to sue only under its registered corporate name. *See Lipka v. Minn. Sch. Employees Ass'n, Local 1980,* 550 N.W.2d 618, 622 (Minn.1996) ("[J]udicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us."). Instead, we limit our analysis to a determination of whether a corporation's failure to sue in its corporate name is a curable defect that may be corrected by amendment.

This court addressed a similar issue in *Save Our Creeks,* when we were called upon to determine whether a complaint signed by a nonlawyer in derogation of the rule that a corporation must be represented by counsel in a legal proceeding was a nullity. 682 N.W.2d at 642. We held that "the lack of an attorney's signature on a complaint filed on behalf of a corporation does not render the complaint null or require dismissal." *Id.* While *Save Our Creeks* involved a violation of a common-law rule concerning corporate plaintiffs, as opposed to a statutory requirement, our analysis of whether the violation resulted in a curable defect is instructive.

In *Save Our Creeks,* we reasoned, in part, that it was proper to emphasize "substance over form to advance the policy favoring resolution of cases on the merits." *Id.* We noted that a conclusion that the lack of an attorney's signature is a curable defect was consistent with recent Supreme Court rulings, stating, "the lack of an attorney's signature on a corporation's pleading should not be fatal when, as in this case, no doubt exists about the nature of the claims and the theory on which the claims are based." *Id.* at 644. Finally, we relied on the fact that the rule requiring that a corporation be represented by counsel does not mandate a particular sanction and concluded that district courts may therefore exercise discretion to determine whether an amendment is appropriate to cure the omission. *Id.* To determine whether an amendment is appropriate, the district courts "may properly rely on considerations of fault, diligence, and prejudice." *Id.* at 645.

■ Our reasoning in *Save Our Creeks* applies with equal force here. Assuming, without deciding, that section 302A.161, subd. 3, requires a corporation to sue only in its registered corporate name, the statute does not mandate a particular sanction when a corporate plaintiff fails to do so. And automatic dismissal for a corporate plaintiff's failure to sue in its registered corporate name would contravene the policy favoring adjudication of cases on their merits. We believe it is proper to place substance over form and to allow the district court discretion to determine, based on the facts of an individual case, whether an amendment to correct a misstatement of a corporate plaintiff's name is appropriate. We therefore conclude that a complaint that misstates a corporate plaintiff's registered name may be amended to correct the misstatement; dismissal is not required.

Metro argues that we should affirm by adopting the approach of jurisdictions that have held that a corporation may sue using

a name under which it transacts business. *See, e.g., Davis v. Tex–O–Kan Flour Mills Co.*, 186 F.2d 50, 51–52 (5th Cir.1950) (concluding that it is well established that a corporation can bring suit under its assumed name); *Sam's Wholesale Club v. Riley*, 241 Ga.App. 693, 527 S.E.2d 293, 296 (1999) ("A corporation conducting business in a trade name may sue or be sued in the trade name ...." (quotation omitted)); *Hy–Grade Inv. Corp. v. Robillard*, 196 So.2d 558, 560–61 (La.App.1967) (holding that suing under an assumed name was not fatal to the suit "where the identity of the corporation was shown and defendant was not misled thereby"). The district court noted that no Minnesota authority prohibits a corporation from bringing an action under an assumed name, but did not base its decision on this approach. Because this approach involves unnecessary interpretation of section 302A.161 and we can decide this case without deciding whether, in Minnesota, a corporation is only authorized to sue under its registered name, we exercise restraint and decline to do so. *See Lipka*, 550 N.W.2d at 622 ("[J]udicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us.").

In rejecting RAM's standing argument and denying its motion for summary judgment, the district court concluded that (1) RAM "mischaracterize[d] [section 302A.161, subd. 3] as requiring a plaintiff to bring an action in its corporate name or the action is a nullity" and (2) Metro's erroneous statement of its name could be corrected by amendment. The district court reasoned: "In the instant case ... all the parties are the correct parties and have been the only parties involved from the beginning of this matter. The case at bar does not deal with changing or substituting parties, rather it deals with a misdescription of *Metro's* name in the caption."

The district court's reasoning and conclusions are consistent with our analysis herein. Accordingly, we affirm the district court's denial of RAM's motion for summary judgment.

## II.

▮ Having concluded that a pleading that misstates a corporate plaintiff's name may be amended to correct the misstatement, we next consider whether the district court erred by allowing the corrective amendment in this case. "The district court has broad discretion to grant or deny leave to amend a complaint, and its ruling will not be reversed absent a clear abuse of that discretion." *State v. Baxter*, 686 N.W.2d 846, 850 (Minn.App.2004) (citing *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993)). "The district court should liberally grant motions to amend when justice requires and doing so will not result in prejudice to the adverse party." *Ag Servs. of Am., Inc. v. Schroeder*, 693 N.W.2d 227, 235 (Minn.App.2005). The district court may rely "on considerations of fault, diligence, and prejudice." *Save Our Creeks*, 682 N.W.2d at 645.

▮ The district court granted Metro's motion to amend because "[t]he misdescription of Metro's name in the caption [was] merely a clerical error" and there was no prejudice to RAM. RAM claims that the district court abused its discretion. At oral argument before this court, RAM argued that it did not know the plaintiff's identity. But RAM conceded that it understood the claims that had been asserted against it, and that it knew the claims arose from its contractual relationship with Metro and its design and installation of a ventilation system for Manahan Stables. In its answer to Metro's complaint, RAM expressly acknowledged its contract with "Metro Building Companies,

Inc." and admitted that it designed and constructed a building pursuant to Metro's specifications. RAM nonetheless argued that because "Metro Building Companies, Inc." did not exist, it did not know who the plaintiff was. The record refutes this argument. As succinctly stated by the district court: "[RAM] knew who was suing [it] and why. There was no confusion."

RAM also argues that it was prejudiced because the district court allowed an "amendment to a nullity after the statute of limitations had expired," and thereby allowed Metro to "breathe life" into a time-barred cause of action. But this argument is based on RAM's arguments, which we have rejected, that Metro lacked standing to sue and its suit was a nullity. The district court correctly reasoned that because "[a]t all times, RAM knew who was suing it and knew the gravamen of the complaint," there was no prejudice to RAM. The district court did not abuse its discretion by granting Metro's motion to amend.[4]

 RAM also claims that the district court erred by relating the amendment back to the original complaint. "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Minn. R. Civ. P. 15.03. "The purpose of this relation back doctrine is to prevent meritorious cases from being dismissed for technical, procedural violations." *Ortiz*, 590 N.W.2d at 126. Whether an amended pleading satisfies the requirements of Minn. R. Civ. P. 15.03, such that the

amendment relates back to the original pleading, is a question of law subject to de novo review. *Bigay v. Garvey*, 575 N.W.2d 107, 109 (Minn.1998).

RAM argues that the amendment cannot relate back to the original complaint, because the original claim was a nullity, the district court never acquired jurisdiction, and "amendment or relation back is impossible because the entity related back to never existed." But we have rejected RAM's contention that Metro's lawsuit is a nullity. RAM also argues that Minn. R. Civ. P. 15.03 explicitly recognizes circumstances under which an amendment that changes a defendant will relate back but does not explicitly authorize relation back of an amendment that changes a plaintiff. This argument is based on RAM's assertions that Metro's suit was filed by a "non-existent corporate entity" and that the amendment substituted an "existing plaintiff" for a "non-existent plaintiff." The argument is unavailing because, as explained above, Metro has always been the plaintiff. The amendment merely corrected Metro's corporate name in the pleading—it did not substitute a new plaintiff.

Here, the claims in the amended complaint clearly arose out of the same conduct, transaction, or occurrence set forth in the original pleading, and the requirements of rule 15.03 are satisfied. "[Appellate courts] have [historically] permitted the relation back of amendments so long as the defendant has adequate notice of the claim against him and would not be unfairly prejudiced by the relation back of the amendment." *Ortiz*, 590 N.W.2d at 126. RAM had adequate notice of the claim against it and was not prejudiced by

---

4. In this case, the names, "Metro Building Companies, Inc." and "Metro Building & Painting Companies," are similar. There may be a case, however, in which the names are so dissimilar that the defendant might be misled as to the plaintiff's identity and thereby prejudiced. In such a case, amendment may not be appropriate. But these are not the circumstances in this case.

relation back of the amendment. The district court did not err by relating Metro's amendment back to the date of the original pleading.[5]

## DECISION

The district court correctly rejected RAM's claim that Metro lacked standing and capacity to sue merely because it misstated its registered corporate name in its complaint. The district court therefore did not err by denying RAM's motion for summary judgment. Metro's failure to correctly state its registered corporate name in its pleading was a curable defect. Despite the defect, RAM was aware, at all times, of who was suing it and why. Given the lack of any prejudice to RAM, the district court neither abused its discretion by allowing Metro to amend its complaint to correct its corporate name, nor erred by relating the amendment back to the original complaint.

**Affirmed.**

---

5. Metro cites to Minn. R. Civ. P. 17.01 to support the relation back of the amendment. Rule 17.01, however, concerns substitution of the real party in interest. Because Metro was at all times the real party in interest and the issue here merely concerns the misstatement of its name, rule 17.01 is inapplicable.